## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | |
|---|---|
| MARCUS MCDANIEL <br><br>     PLAINTIFF, <br><br> V. <br><br> CITY OF AUGUSTA-RICHMOND COUNTY, THROUGH ITS MAYOR GARNETT JOHNSON, IN HIS OFFICIAL CAPACITY, AND ITS COMMISSION, IN ITS OFFICIAL CAPACITY, <br><br>     DEFENDANT. | CIVIL ACTION NO.: _____ <br><br> **JURY TRIAL DEMANDED** |

## <u>COMPLAINT FOR DAMAGES (ADD PAGE NUMBERS)</u>

Plaintiff Marcus McDaniel, by and through undersigned counsel, brings this Complaint against the City of Augusta-Richmond County for violations of Title VII of the Civil Rights Act of 1964, and alleges as follows:

### INTRODUCTION

Plaintiff Marcus McDaniel ("Plaintiff" or "Mr. McDaniel") alleges that Defendant City of Augusta-Richmond County ("the City" or "Defendant") violated Title VII by discriminating against him because of his sex and by retaliating against him by terminating him for engaging in protected activity by reporting and filing internal EEO complaints for the sexual harassment he endured. On January 16, 2024, the Equal Employment Opportunity after investigation found that "there is reasonable cause to conclude that Mr. McDaniel was subjected to sexual harassment, disciplined and discharged because of his sex and terminated in retaliation for engaging in protected activity in violation of Title VII." Mr. McDaniel specifically alleges that the City: (1) condoned acts of sexual harassment committed against him by a woman; (2) subjected him to

disparate treatment regarding the investigation of his claims and discipline because he was complaining about a woman; and (3) retaliated against him when it terminated him for filing his sexual harassment complaint. In addition, Mr. McDaniel alleges that the denials of his appeals were likewise discriminatory and retaliatory wherein those decisions were the result of animus or were tainted by the discriminatory motives and actions of the EEO Department and Mr. McDowell. Lastly, the conduct towards Mr. McDaniel represents the City's pattern and practice of targeting persons who file complaints with the City's EEO Department or otherwise complain of discrimination, labeling their complaints as unsubstantiated contrary to reality, and punishing them rather than protecting them. Mr. McDaniel is just one of many former employees against whom the City used its EEO Department as a tool for retaliation to create a chilling effect on future complaints. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, and seeks compensatory and punitive damages, injunctive relief, and attorney's fees, and seeks a change in the culture of retaliation in Richmond County.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 42 U.S.C. §2000e-5(f)(3).

2.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3), because the unlawful employment practices alleged herein occurred in Augusta-Richmond County, Georgia.

## PARTIES

3.      Plaintiff is a male citizen of the United States and a resident of the State of Georgia. At all times relevant to this action, he was employed by the Defendant within the meaning of Title VII.

4.      Defendant City of Augusta-Richmond County is a political subdivision of the State of Georgia and a "person" within the meaning of 42 U.S.C. §2000e(a), and an "employer" within the meaning of 42 U.S.C. §2000e(b).

5.      Defendant City of Augusta-Richmond County may be served with process through its Chief Executive Officer, Mayor Garnett Johnson, at 535 Telfair Street, Augusta, Georgia 30901.

## ADMINISTRATIVE EXHAUSTION

6.      Mr. McDaniel timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2022-02575, alleging sex discrimination and retaliation.

7.      On January 16, 2024, the EEOC issued a Letter of Determination finding, "there is reasonable cause to conclude that Charging Party was subjected to sexual harassment, disciplined, and discharged because of his sex and terminated in retaliation for engaging in protected activity in violation of Title VII." (EEOC Letter of Determination, attached hereto as Exhibit 1.)

8.      On May 17, 2024, upon the conciliation conference failing to result in settlement of his claims, the EEOC issued a notice of failure of conciliation and submitted the case to the Department of Justice. (Conciliation Letter and Transmittal to DOJ, attached hereto as Exhibit 2.)

9.      On or about January 24, 2025, the DOJ issued to Mr. McDaniel a Notice of Right to Sue, and this Complaint is filed within 90 days of receipt of that Notice. (DOJ Notice of Right to Sue, attached hereto as Exhibit 3.)

## FACTUAL ALLEGATIONS

10.     For approximately three years, Mr. McDaniel was employed by the City of Augusta as a Recreation Center Manager.

11.     In January 2021, the City hired Marcia Mitchell as a Parks Maintenance Worker, and she began working under Mr. McDaniel's supervision.

12.     From the outset of her employment, Ms. Mitchell subjected Mr. McDaniel to a pattern of sexually harassing behavior, including unwelcome romantic and sexual overtures, requests for physical contact, sexually suggestive comments, and inappropriate nicknames such as "bubble butt."

13.     On an almost daily basis, Ms. Mitchell openly pursued a sexual relationship with Mr. McDaniel, despite his repeated and unequivocal rejection of her propositions.

14.     Ms. Mitchell repeatedly entered Mr. McDaniel's office to flirt with him.

15.     Ms. Mitchell neglected her duties to pursue him and followed him around the facility after hours while he was off the clock and attempting to work out.

16.     On January 26, 2021, she made sexually suggestive statements directed at Mr. McDaniel such as, "If I drink that [Long Island Iced Tea], somebody's getting raped."

17.     On another occasion, she told Mr. McDaniel that she takes medication for "lust" that she had not taken recently.

18.     On February 1, 2021, one of her more egregious actions involved Ms. Mitchell cornering Mr. McDaniel in a maintenance closet, blocking his only exit and thrusting her hips at him in a sexually aggressive manner.

19.     Having had enough, on that same day, Mr. McDaniel complained to Mr. Stanley Brown, his supervisor, about Ms. Mitchell's harassment.

20.     Mr. Brown treated it more as a joking matter than a serious violation of workplace policies and federal law.

21.     Eventually, as her behavior continued and worsened, Mr. Brown advised Mr. McDaniel of his right to file an EEO complaint, noting that a write up from him, Mr. Brown, would be ineffective.

22.     Mr. Brown was already aware of Ms. Mitchell's behavior at the time.

23.     Mr. McDaniel consistently rejected her advances, told her to stop, and began locking his office door to prevent further harassment.

24.     He allowed her access to the office only for legitimate work-related purposes.

25.     Despite his efforts to avoid her, Ms. Mitchell escalated her behavior.

26.     Despite being aware of her behavior and even witnessing it firsthand, management, including their mutual supervisor Stanley Brown, failed to take corrective action.

27.     Ms. Mitchell told the internal EEO Investigator that Mr. Brown told her that Marcus hated when people talked about his butt and suggested she call Mr. McDaniel "bubble butt" to provoke him.

28.     Mr. McDaniel's supervisor had notice of Ms. Mitchell's sexual misconduct.

29.     On February 1, 2021, Ms. Mitchell, who remained "on the clock," entered the weightroom and made advances towards Mr. McDaniel.

30.     As she had done before, she started by talking about the two of them working out together and soon ventured into explicit sexual overtures, both directly and by innuendo.

31.     Mr. Brown, who was also in the weightroom, began to deride and admonish Ms. Mitchell, specifically for her romantic pursuit of Mr. McDaniel.

32.     Mr. Brown asked Ms. Mitchell why she was following Mr. McDaniel around. She responded that she takes medication for lust that she had not taken recently.

33.    In response, Mr. Brown asked, "are you telling me that you're lusting after [Mr. McDaniel]?" She responded, "well, I'm not gay."

34.    Mr. Brown's criticisms of Ms. Mitchell involved her aggressive pursuit of Mr. McDaniel, which—in Mr. Brown's opinion—was a sign that either her religious practices or mental health were disordered.

35.    Mr. McDaniel did not participate in the conversation but was a captive witness.

36.    Mr. McDaniel did not criticize Ms. Mitchell's beliefs, did not question her mental health, and merely continued his workout.

37.    When approached by upper management and Human Resources about what he witnessed, Mr. McDaniel confirmed the parts of Ms. Mitchell's account which he witnessed and believed to be accurate.

38.    Ms. Mitchell's complaint led to Mr. Brown being suspended.

39.    On February 12, 2021, Mr. McDaniel filed a sexual harassment complaint against Ms. Mitchell with the City's EEO office.

40.    Despite her actions described herein, Ms. Mitchell was not disciplined.

41.    The City opened an investigation led by Debra Poole but conducted it in a biased and deficient manner.

42.    During the investigation, Ms. Mitchell admitted to or confirmed at least three of Mr. McDaniel's allegations.

43.    For example, Mr. McDaniel accused Ms. Mitchell of repeatedly asking him for hugs even after he asked her to stop.

44.    Ms. Mitchell admitted to Ms. Poole during her investigation that she did ask him for hugs.

45.    Similarly, Ms. Mitchell admitted to calling Mr. McDaniel "bubble butt" with the expectation that it would offend him.

46.    She testified that Mr. Brown told her Mr. McDaniel did not like anyone talking about his butt and she should call him that and "see Mr. McDaniel get offended."

47.    Regarding his allegation that Ms. Mitchell made unwanted, sexually suggestive gestures by blocking his exit from the maintenance closet and thrusting her hips at Mr. McDaniel, Ms. Mitchell claimed not to remember such an incident and denied ever setting foot in the maintenance closet.

48.    Ms. Mitchell position as Parks Maintenance Worker required her to access the maintenance closet during the course of her employment.

49.    Ms. Mitchell likewise claimed not to recall asking Mr. McDaniel to dinner, but other employees did recall her asking him.

50.    Ms. Poole ignored the evidence against Ms. Mitchell, which corroborated Mr. McDaniel's allegations.

51.    The investigation, likewise, did not disprove any of Mr. McDaniel's allegations.

52.    Ms. Poole failed to question Mr. McDaniel's corroborating witnesses.

53.    Mr. McDaniel was terminated on August 3, 2021.

54.    The termination letter stated that Mr. McDaniel's allegations against Ms. Mitchell were false and fabricated in retaliation against Ms. Mitchell's complaint against Mr. Brown.

55.    The termination letter did not mention a breach of confidentiality during the investigation, yet the City later cited that as a reason for Mr. McDaniel's termination.

56.    In addition, Mr. McDaniel was not provided with Ms. Poole's investigative report prior to his termination, violating City policies.

57.    The City refused to provide Mr. McDaniel with a copy of the investigative report, which he obtained through an open records request under Georgia's Open Records Act.

58.    The City discriminated against Mr. McDaniel by disciplining him for complaining about conduct Ms. Mitchell admitted to or that was otherwise corroborated.

59.    The City discriminated against Mr. McDaniel in the terms and conditions of his employment by not disciplining Ms. Mitchell, the sexual harasser.

60.    The City excused Ms. Mitchell's severe and pervasive harassment of Mr. McDaniel, much of which she admitted to or was corroborated by other witnesses.

61.    Similarly, other City employees, have been retaliated against with adverse employment actions for filing discrimination complaints with the internal EEO of Richmond County.

62.    Mr. McDaniel's termination was part of a broader pattern and practice by the City of retaliating against employees who report discrimination.

63.    The City's actions created a chilling effect on the willingness of employees to engage in protected activity, contrary to the purpose of Title VII.

64.    Mr. McDaniel has suffered lost wages, loss of earning capacity, reputational damage, emotional distress, and other consequential damages.

**CLAIMS FOR RELIEF**

COUNT I
SEX DISCRIMINATION - HOSTILE WORK ENVIRONMENT
(Title VII, 42 U.S.C. §2000e-2(a))

65.    The allegations set forth in each preceding paragraph are re-alleged and incorporated herein by reference.

66.    Title VII prohibits employers from discriminating against employees because of sex, including creating a hostile work environment through sexual harassment.

67.    Plaintiff was subjected to repeated, persistent, graphic, and unwelcome sexual advances by Ms. Mitchell which included physical unwanted touching.

68.    Although the Plaintiff complained about the sexual harassment by his co-worker, management did nothing to prevent it or to stop it.

69.    Plaintiff was subjected to unwelcome conduct of a sexual nature by Ms. Mitchell.

70.    The conduct was based on Plaintiff's sex and was both objectively and subjectively severe and pervasive.

71.    Defendant knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

72.    No meaningful corrective action was taken despite Plaintiff reporting the harassment to his direct supervisor and to Human Resources.

73.    Defendant's conduct violated Plaintiff's rights under Title VII.

74.    As a proximate result of Defendant's willful, knowing, and intentional misconduct, Plaintiff has sustained and continue to sustain substantial losses of earnings and other employment benefits.

75.    As a proximate result of Defendant's willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

76.    Defendant's misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner.

77.    Plaintiff has incurred and continues to incur legal expenses and attorney's fees; Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

COUNT II
SEX DISCRIMINATION - DISPARATE TREATMENT
(Title VII, 42 U.S.C. §2000e-2(a))

78.    The allegations set forth in each preceding paragraph are re-alleged and incorporated herein by reference.

79.    Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's sex. 42 U.S.C. § 2000e-2(a)(1).

80.    Plaintiff was subjected to less favorable treatment in the terms and conditions of his employment because of his sex (male).

81.    Plaintiff was subjected to unwanted verbal and physical sexual harassment by his coworker, Ms. Mitchell.

82.    Rather than remedy her actions, Plaintiff's supervisor ridiculed Plaintiff for his response to the unwanted attention and instigated Ms. Mitchell to continue her harassment by calling Plaintiff, her supervisor, "bubble butt."

83.    Plaintiff felt ostracized or made fun of because his coworkers treated Plaintiff as if he was wrong for complaining of Ms. Mitchell's actions because he was a man and she was a woman.

84.    Management likewise excused Ms. Mitchell's behavior due to Plaintiff being male, downplaying the severity of her actions.

85.    Defendant treated Plaintiff less favorably than similarly situated employees by discrediting his complaints of sexual harassment and not disciplining the female harasser, Ms. Mitchell, although she admitted to inappropriate sexual conduct on the job.

86.    Defendant treated Plaintiff less favorably than similarly situated female employees by disciplining him for behavior that was excused or ignored when committed by female employees.

87.    Specifically, Ms. Poole's investigation referenced multiple female employees discussing the "confidential" investigation at work.

88.    Female employees were not disciplined for violating the confidentiality of the investigation which were in text messages.

89.    The Defendant stated a basis for terminating Mr. McDaniel was violating confidentiality.

90.    Mr. McDaniel did not violate confidentiality.

91.    Defendant's adverse actions were because of Plaintiff's sex.

92.    Defendant's failure to act and discipline the female harasser was because of Plaintiff's sex as a male complaining about a females unwanted sexual advances.

93.    As a proximate result of Defendant's willful, knowing, and intentional misconduct, Plaintiff has sustained and continue to sustain substantial losses of earnings and other employment benefits.

94.    As a proximate result of Defendant's willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

95.     Defendant's misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner.

96.     Defendant is liable for Mr. Brown's failure to intervene and remedy the harassment.

97.     Plaintiff has incurred and continues to incur legal expenses and attorney's fees; Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

COUNT III
RETALIATION IN VIOLATION OF TITLE VII
(42 U.S.C. §2000e-3(a))

98.     The allegations set forth in each preceding paragraph are re-alleged and incorporated herein by reference.

99.     Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice . . ." 42 U.S.C. § 2000e-3(a).

100.    Plaintiff engaged in protected activity by complaining to his supervisor, Stanley Brown, about the sexual harassment he was experiencing.

101.    Plaintiff engaged in protected activity by filing informal and formal complaints of sexual harassment.

102.    Specifically, on February 12, 2021, Plaintiff completed an "EEO Online Complaint."

103.    On March 16, 2021, Plaintiff completed a formal "EEO Intake Form."

104.    On March 25, 2021, Debra Poole sent Plaintiff a letter acknowledging receipt of his complaint.

105.    On July 22, 2021 Human Resources completed its investigation and recommended Plaintiff's termination.

106.    Despite an investigation where Ms. Mitchell admitted to inappropriate sexual conduct on the job, she was not terminated.

107.    On August 3, 2021, Defendant terminated Plaintiff which was an adverse employment action.

108.    The stated reasons in the termination letter for Plaintiff's termination, violation of workplace policies, were pretext for unlawful retaliation.

109.    On August 4, 2021, Plaintiff inquired about the results of the investigation and was told that the findings would not be sent to him.

110.    Defendant's retaliation was willful and in reckless disregard of Plaintiff's rights.

111.    As a proximate result of Defendant's willful, knowing, and intentional misconduct, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

112.    As a proximate result of Defendant's willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

113.    Defendant's misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner.

114.    Plaintiff has incurred and continues to incur legal expenses and attorney's fees; Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1) Grant a trial by jury on all issues so triable;

2) Declare that Defendant violated Plaintiff's rights under Title VII;

3) Award back pay, front pay, and lost benefits;

4) Award compensatory damages for emotional pain and suffering;

5) Award punitive damages as authorized by law;

6) Award pre-judgment and post-judgment interest;

7) Award reasonable attorneys' fees and costs of litigation; and

8) Grant such other and further relief as this Court deems just and proper.


Respectfully submitted this 24th day of April, 2025.


/s/ Tanya D. Jeffords
Tanya D. Jeffords
Georgia Bar No. 390055

/s/ Kenneth S. Ratley
Kenneth S. Ratley
Georgia Bar No. 359246

Law Offices of Tanya D. Jeffords and Associates, P.C.
437 Walker Street
Augusta, Georgia 30901
(706) 722-3019

Attorneys for Plaintiff